Delco L. CORNETT, Plaintiff,

v.

Seymour SHELDON, Weyman Carey, Vincent J. Cuttita, Douglas Kellner, Ferdinand C. Marchi, Paul Mejias, George M. Spanakos, Gertrude Strohm, and Kathleen Wagner, Defendants.

No. 94 Civ. 6621 (JGK).

United States District Court,
S.D. New York.

Aug. 8, 1995.

Domenick Crispino, New York City, for plaintiff.

Paul A. Crotty, Corp. Counsel of the City of New York, New York City by Chlarens Orsland, Asst. Corp. Counsel, for defendants.

## OPINION & ORDER

KOELTL, District Judge:

The defendants have moved for dismissal of the complaint or, alternatively, for summary judgment. In the Second Amended Complaint (hereinafter "the complaint"), plaintiff Delco Cornett seeks compensatory and punitive damages for the defendants' failure to place his name on the ballot in the 14th Congressional District in Manhattan as the Right to Life Party candidate for the

United States House of Representatives in the last election.

The defendants are alleged to be employees and members of the New York City Board of Elections. Cornett claims that they deprived him of his rights to equal protection and due process under both the federal and New York state constitutions. His federal constitutional claims are brought pursuant to 42 U.S.C. § 1983.[1] The thrust of his claims is that his petition to be placed on the ballot was wrongfully rejected, because the objections to it should never have been heard by the Board of Elections.

The objector to the plaintiff's petition sent specifications of the objections to him at an incorrect address, apparently due to a typographical error. Even though Cornett appeared for the Board of Elections hearing on his petition and personally contested the objections, even though he had an opportunity to be fully heard, and even though he does not argue that the objections to his petition were invalid, he now claims that the Board's alleged failure to follow its rules requiring service of the specifications and filing of a proof of service deprived him of his constitutional rights. For the reasons stated below, the Court grants the defendants' motion for summary judgment.

## I.

New York election law provides for the nomination of candidates of independent parties by petition. The law denominates independent parties as "independent bodies," which it defines in contrast to "parties." A "party" is a political organization that polled at least 50,000 votes for its candidate for governor in the last election. N.Y.Elec.Law. § 1–104(3) (McKinney 1988). An "independent body" is a nominating group or organization which is not a party. *Id.* § 1–104(12). "Party" candidates are nominated through the primary election process. *See Id.* § 6–110. Independent candidates are nominated by petition. *Id.* § 6–138(1).

New York Election Law § 6–142 defines the number of signatures a petitioner must obtain in order to be nominated as an independent candidate. Petition signatures must be witnessed by a party member who is a qualified voter or by a notary public or commissioner of deeds. *Id.* § 6–140. A nominating petition timely filed in proper form and appearing to bear the requisite number of signatures needed for nomination is presumptively valid. *Id.* § 6–154(1). However, written objections to a nominating petition may be filed by any person qualified to vote for the office within three days after the filing of the petition. *Id.* § 6–154(2). Specifications of the grounds of the objections must be filed within six days of the filing of the objections. *Id.* The rules of the Board of Elections state that an objector must serve these specifications upon the petitioner and file proof of service before the Board will consider the objections. *See infra,* fn. 3. Cornett does not contend that his petition was valid, but rather that the Board's failure to follow its rule requiring dismissal of objections when specifications have not been served upon the petitioner wrongfully deprived him of the presumption of validity which the petition otherwise would have enjoyed.

## II.

■ The present motion seeks dismissal of the complaint or, in the alternative, summary judgment. For the purpose of deciding a motion to dismiss, a court is to accept the allegations of the complaint as true.[2] As explained below, the Court finds it appropri-

---

1. Section 1983 provides in relevant part that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

2. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Doe v. City of New York,* 15 F.3d 264, 266 (2d Cir.1994); *Andrea Theatres, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 64 (2d Cir.1986) ("[A]ll allegations of the complaint must on a Rule 12(b)(6) motion be accepted as true ...") (citations omitted).

ate to consider materials outside of the complaint and the other pleadings and to grant summary judgment for the defendants rather than to dismiss the complaint. *See* Fed. R.Civ.P. 12(b) (stating that a motion to dismiss is to be treated as one for summary judgment as provided in Fed.R.Civ.P. 56 if matters outside the pleadings are presented and not excluded by the court); *In re G. & A. Books*, 770 F.2d 288, 295 (2d Cir.1985) ("The essential inquiry [in determining the adequacy of notice of conversion] is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."), *cert. denied sub nom., M.J.M. Exhibitors, Inc. v. Stern*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986). The parties have been given notice of the materials, which consist primarily of a videotape of the hearing before the New York City Board of Elections, and there is no dispute as to their authenticity. None of the materials outside of the pleadings that the Court has considered controvert the complaint's material factual allegations.

The complaint alleges as follows. Seeking to be placed on the primary ballot as the Right to Life Party candidate for the United States House of Representatives in the 14th Congressional District, plaintiff Delco Cornett collected petition signatures in June and July, 1994 and submitted a petition to the Board of Elections later in July. A Republican District Leader, James Mahon, filed a general objection to Cornett's petition with the Board of Elections seeking its invalidation. The Board's rules state that it will not consider objections to a nominating petition unless prior to filing the specific objections with the Board the objector serves a copy of the specifications upon the petitioner, either personally or by registered mail.[3] The Board has complied with this rule in the cases of other candidates, including Augustin Alamo, but in Cornett's case the Board heard objections to the petition although Cornett never received a copy of the specifications from Mahon. Cornett was however aware of the Board of Elections hearing on July 29, 1994 at which the Board was to consider the objections and he did in fact attend it. At the hearing, Cornett informed the Board that, "I would like to say that I've never received a copy of the specifications, and I'd like to see a proof of service." Complaint ¶ 21, (citing Hearing Tr. at 65). A proof of service was not produced to Cornett at that time. A proof of service was filed, but it does not state Cornett's correct address.

The defendants have filed a statement pursuant to Rule 3(g) of the Local Civil Rules in support of their motion in the alternative for summary judgment, which sets forth the material facts as to which they contend there is no genuine dispute. The statement does not dispute any of the foregoing facts alleged in the complaint but merely elaborates on them. The plaintiff's counter–3(g) statement does not controvert any of the material allegations in the defendants' 3(g) statement,[4] which are

---

**3.** The Board of Elections Independent Nominating Petition Rules state:

> At a meeting of the Commissioners of Elections held on May 3, 1994 the following rules for the General Election, to be held on November 8, 1994 in connection with the filing and examination of petitions and other procedures related thereto, were adopted by the Board of Elections....
> D. SPECIFICATIONS ...
> 6. No Specifications to any petition will be considered by the Board unless, prior to filing such Specifications with the Board of Elections, a duplicate copy of the Specifications is served personally or by certified or registered mail upon the candidate designated in the petition objected to for public office. Such compliance will be deemed proper service by the Board of Elections....

> 8. A copy of the proof of service of Specifications, served personally or mailed by certified or registered mail to the candidate for public office must be filed in person at the General Office, Board of Elections, 32 Broadway, New York, N.Y. 10004, no later than the day after specifications are filed. At such time, a receipt therefor will be given to you.

Independent Nominating Petition Rules of the Board of Elections in the City of New York.

**4.** The plaintiff's counter 3(g) statement which was filed with the first amended complaint, which did not contain a due process claim, sets forth five alleged genuine issues of material fact. The Court finds there is no genuine issue of material fact with regard to any of these contentions. First, the plaintiff alleges that at the time he was seeking to be placed on the ballot for the United States House of Representatives he was

set forth below, and these will therefore be deemed to be admitted by the plaintiff pursuant to Rule 3(g). The complaint, 3(g) statements, and an undisputedly authentic videotape of the July 29 Board hearing demonstrate that there is no genuine issue as to any material fact in this case and that the defendants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Giano v. Senkowski,* 54 F.3d 1050, 1052 (2nd Cir.1995); Fed.R.Civ.P. 56(c).

The defendants' Rule 3(g) statement alleges as follows. The proof of service filed by Mahon with the Board incorrectly listed Cornett's address as 140 East 30th Street, New York, New York, rather than 140 East 31st Street. Nonetheless, Cornett was aware of the hearing on July 29, 1994 because the Board, pursuant to its regular procedures, sent a notice to him at his correct address advising him that Mahon had filed a general objection to the petition, that there would be a hearing on the objection on July 29, and that after a period of a few days he should call the Candidate Records Unit to determine whether specifications to the objection had been filed. At the hearing, Cornett was afforded an opportunity to review the specifications and the Clerk's report recommending a decision on the specifications and he presented a defense to the objections.

Cornett's petition contained 35 signatures of purported Right to Life voters within the 14th Congressional District. He needed only 19 signatures to be placed on the ballot. The Clerk's report recommended that 26 of the signatures be declared invalid, leaving Cornett with only 9. Most of the 26 signatures alleged to be defective were found to be defective because the subscribing witness, Cornett himself, was not a member of the Right to Life Party. At the hearing, the Commissioners of the Board of Elections adopted the findings of the Clerk's Report and invalidated the 26 signatures, thus depriving Cornett of a place on the ballot.

At the same hearing, the Board dismissed objections to another petition, that of Augustin Alamo, due to an improper notice of service of the objections. However, in Alamo's case the proof of service did not merely list an incorrect address for the candidate, but indicated that the specifications of the objections had been sent to a member of Alamo's Committee on Vacancies rather than to Alamo himself. *See* N.Y.Elec.Law § 6–140(1) (requiring nominating petitions to include the names of three persons who will constitute a committee to fill vacancies in accordance with the provisions of the election law). This defect in service was thus apparent from the face of the proof of service, was brought to the Board's attention at the hearing, and was a basis for its decision to dismiss the objections.

Lastly, the Court finds that the undisputedly authentic videotape of the July 29 Board of Elections hearing contains the following colloquy:

CLERK: Right to Life Party, New York County. Petition number 118, 182, specification number 9, matter of the objections of James Mahon, for the petition of Delco Cornett for Congress in the 14th District. Please state your appearances for the record. Could you turn off the beepers?

CORNETT: My name is Delco Cornett. I'm the candidate for the Right to Life Party to Congress in the 14th Congressional District.

HUMANE: My name is Frederick Humane, Zeichner, Elman & Krause, 757 Third Avenue, New York, New York 10017, counsel for James Mahon, objector.

CLERK: Number of signatures claimed on the cover sheet 35, total invalid signa-

---

also running as a candidate for the State Assembly of New York, not the State Senate. This issue is not material. Second, he alleges that the Board of Elections sent him a notice that a general objection had been filed against his petition, but did not send him a copy of the specifications. The defendants admit this. Third, fourth, and fifth, the plaintiff alleges that § 1983 does not require exhaustion of administrative remedies, that the Board of Elections has no authority other than that granted to it by statute, and that the Board's statutory power extends only to ministerial examination of the legal sufficiency of a petition. These issues are not issues of fact and the first two are not disputed.

tures 26, total valid signatures 9, number of signatures required 19.

BOARD: All right, gentlemen.

HUMANE: I move the clerk's report.

BOARD: Let's hear from the candidate. Go on.

CORNETT: *I would like to say that I've never received a copy of the specifications, and I'd like to see a proof of service.*

HUMANE: *I have—To save time, I have a copy of the stamped one and a copy of the affidavit of service.*

BOARD: Can we accept that as a fact? Well, we can take a look at it. (Papers handed to the Board by Humane.)

CLERK: It appears to be stamped by the Board of Elections.

BOARD: *Show it to Mr. Cornett. Can you ...*

CLERK: (Papers not shown, but read by Clerk.) July 25—it's sent to Delco Cornett, *140 East 30th Street, New York,* New York 10016. *Is that your address?*

CORNETT: *Yes.*

BOARD: *Then, there's proof of service, Mr. Cornett.* Whose signature is on there? Oh, that's just a proof of mailing, I'm sorry.

HUMANE: I think it's already been moved and seconded.

BOARD: Yes, it has.

CORNETT: I haven't had a chance—

BOARD: Well, I just gave you the opportunity to respond, because there is a motion on the floor.

CORNETT: That was the first item, I had never received it, *so I just wanted to see it before I addressed—*

BOARD: *Now are you satisfied after seeing it. Would you like to address the specifications?*

CORNETT: *Yes, that's what I'm here for.* I thought I'd be given an opportunity to speak before a kangaroo court. (Disruption). Well a motion was made and it was seconded before I was even asked to respond.

BOARD: Excuse me, sir. You were given the opportunity to respond, now please do.

CORNETT: Yes. On this clerk's report which I received this morning, it says reason for invalidation of signatures, and it has witness statement, 23 not registered. Now I was the person who collected—I'm the candidate—I also collected the signatures, most of them, so this refers basically to myself. And I am a registered voter. I've been registered since 1981. I voted in every election. I ran for borough president last year which I believe you have to be a registered voter to do that.

So I'm taking exception to this clerk's report in that it's stating that the witness was not registered for 23 of these petition signatures.

HUMANE: He is registered as a Republican, and he was soliciting signatures as a Right to Life candidate.

BOARD: You understand the distinction?

CORNETT: Well, that next item says not enrolled, but this is not what's being cited, is not enrolled in another party. Additionally, as the candidate I believe I have an inherent right as a citizen to always witness and collect signatures for myself for public office. The Right to Life Party did give me a Wilson Pakula [5] recognizing that even though I may be formally registered in another party,

---

**5.** The Wilson–Pakula Law as enacted in Chapter 432 of the Laws of 1947 proscribed primary election designating petitions, nominations by certain bodies, and nominations by committees on vacancies from designating or nominating non-members of political parties, but permitted an exception if the party committee of the political unit involved filed a certificate of authorization for the nomination of a non-party member. N.Y.Election Law § 6–120(2) currently provides that "Except as provided in subdivisions three and four of this section, no party designation or nomination shall be valid unless the person so designated or nominated shall be an enrolled member of the political party referred to in the certificate of designation or nomination at the time of filing such certificate." N.Y.Elec.Law § 6–120(2). Section 6–120(3) provides the current procedure for a party to authorize the nomination of a candidate who is not a member of the party. *See* N.Y.Elec.Law § 6–120(3).

that I am supported by the Right to Life Party. They realize that even though I'm registered, I'm going to be running as the Right to Life candidate.

So as a matter of common sense, the candidate should always have an inherent right, basic Constitutional right to campaign for a public office unless he's in prison or otherwise prevented from running for an office. And if need be, the candidate must always have the right to go out personally and solicit signatures. I shouldn't be dependent upon somebody else doing this for me. I believe it's a Constitutional Right of a candidate, and it has been ratified by the Right to Life Party. They have given a Wilson Pakula.

So I think it's highly erroneous to throw out a petition in which the candidate himself collected the signatures. He collected it as a non-party member of the Right to Life, but made it known that he was doing it in that fashion, signed my petitions as a Republican, and was given the Wilson Pakula by the Right to Life party. So I feel that this is a constitutional right that any candidate should always have, and I should not be—the people of the Right to Life Party have a right to have their candidates on the ballot and have a chance to express themselves in an electoral fashion, and I believe that this, because it's misstating the characterization, and plus my inherent constitutional right, the clerk's report should be rejected.

BOARD: Thank you. Sir, do you have anything to respond to that?

HUMANE: Well, its contrary to the election law. Mr. Cornett had the opportunity, if he wanted to solicit signatures, to change his enrollment prior to the time he went out to solicit signatures. He could have complied with the election law, and the section of the election law— my book is back there—clearly states

that to be a witness soliciting signatures, you have to be a member of the party for whom you are soliciting signatures. That's the law, and I think this board would be constrained to—

BOARD: There's a motion on the floor . . .

UNKNOWN: Notary or commissioner of deeds.

BOARD: Did you hear that? There can be a notary public or commissioner of deeds in that instance to get signatures. All right, there's a motion on the floor. All in favor of moving the Clerk's report.

BOARD: I'll move it.

BOARD: I'll second it.

BOARD: All in favor.

BOARD: Aye (in unison).

BOARD: All opposed? (pause) Clerk's report.[6]

### III.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Gallo,* 22 F.3d at 1224.

 The moving party bears the initial burden of "informing the district court of the

---

**6.** A videotape of the hearing was submitted by counsel for the defendants with a transcript. The above transcription is the Court's. The parties were given an opportunity to comment specifically on the fact that the tape shows that Cornett affirmed before the Board that the address on the copy of the affidavit of service provided by Humane was his own, even though he now states that the affidavit incorrectly listed his address as "140 East 30th Street" rather than "140 East 31st Street."

basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

■ If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

Cornett claims that the Board of Elections violated his federal constitutional rights to due process and the equal protection of the laws. He claims his due process rights were violated because the Board did not give him notice of the specifications prior to the hearing and that his right to the equal protection of the laws was violated because the Board acted arbitrarily and discriminatorily towards him by not dismissing the objections to his petition for lack of proper service. For the reasons explained below, given the foregoing undisputed facts, the plaintiff's claims are without merit and the defendants are entitled to summary judgment as a matter of law.

### IV.

■ Cornett claims that even if his petition was voidable due to a lack of a sufficient number of valid signatures, the Board's arbitrary and discriminatory failure to enforce its rules requiring service of specifications of objections denied him the benefit of the presumption of validity that would otherwise have attached to the petition in violation of his equal protection rights. The equal protection clause of the Fourteenth Amendment of the Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Deprivation of the equal protection of the laws by a person acting under color of state law is a wrong redressable under 42 U.S.C. § 1983. *Moss v. Hornig,* 314 F.2d 89, 91–92 (2d Cir.1963). The basis of Cornett's equal protection claim is not an assertion that any provision of the New York election laws draws an insupportable discriminatory classification, nor that the election laws, when neutrally applied, are intentionally discriminatory in their impact. Rather, the basis of Cornett's claim is the allegation that the defendants have deprived him of the equal protection of the laws by unequally administering a facially neutral rule. *See E & T Realty v. Strickland,* 830 F.2d 1107, 1112 n. 5 (11th Cir.1987) (noting that equal protection claims can be divided into three categories according to whether they allege: 1) that a statute discriminates on its face, 2) that a statute is intentionally discriminatory in impact when neutrally applied, or 3) that the defendants have unequally administered a facially neutral statute), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Cornett complains that he was deprived of his Fourteenth Amendment right to the equal protection of the laws by the Board's selective failure to enforce its rules.

■ In *LeClair v. Saunders,* 627 F.2d 606 (2d Cir.1980), the Court of Appeals for the Second Circuit, drawing upon qualified immunity and equal protection jurisprudence, formulated the standard for judging an alleged deprivation of equal protection arising from selective enforcement or prosecution of a state law or regulation. The court stated that liability in this type of equal protection case should depend on proof that:

(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*LeClair,* 627 F.2d at 609–610. *See also, FSK Drug Corp. v. Perales,* 960 F.2d 6, 9–10 (2d Cir.1992) (affirming district court's grant of summary judgment for defendant on selective application equal protection claim, because record did not contain evidence of bad faith or malicious intent); *Yerardi's Moody St. Restaurant v. Board of Selectmen of Randolph,* 932 F.2d 89 (1st Cir.1991) (following *LeClair* ); *Acevedo v. Surles,* 778 F.Supp. 179, 185–87 (S.D.N.Y.1991) (same). Finding that disparate application of a law is inevitable if perfect administration of the law is impossible, the court in *LeClair* went on to state:

> "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," as long as "the selection was (not) deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

*LeClair,* 627 F.2d at 611. Section 1983 protects only constitutional rights. It is not simply a means for federal review of allegedly arbitrary and capricious state action. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 888 (2d Cir.1987).

Under the first prong of the *LeClair* test, Cornett was not treated differently than other petitioners by the Board, because the Board attempted to determine if Mahon had served the specifications on Cornett and whether he had filed proof of service and it concluded, with good reason, that he had. Cornett claims that he was treated differently than petitioner Alamo, because the Board dismissed the objections to Alamo's petition after learning that the specifications had been served on a member of his committee on vacancies rather than on Alamo himself. Cornett argues that his case is similar to Alamo's, because in both cases there was no service of the specifications on the petitioner, but that he was treated differently than Alamo, because the objections to his petition were not dismissed. In the absence of service of the specifications, objections must be dismissed, because the failure to serve a copy of the specifications upon the candidate and to file proof of service deprives the Board of jurisdiction. *Zogby v. Longo,* 546 N.Y.S.2d 44, 45, 154 A.D.2d 889, 889 (4th Dep't 1989). However, the Board's treatment of Cornett's petition does not show that it acted any differently towards Cornett than it did towards Alamo. In each case, the Board attempted to determine whether there was service of the specifications and filing of a proof of service. In Cornett's case, the Board had every reason to believe that there was service and proof of service. In Alamo's case, it was clear from the face of the proof of service that there had been no service on the petitioner. *Cf. Maniscalco v. Power,* 3 N.Y.2d 918, 145 N.E.2d 875, 167 N.Y.S.2d 932 (1957) (affirming order validating nominating petition where the Board of Elections sustained objections to the petition in face of allegation by the petitioner that the required service of the specifications had not been made). Viewed from another angle, *Cornett* and *Alamo* were not similarly situated, because it was evident at the hearing in Alamo's case that the specifications had not been served whereas the Board had every reason to believe that specifications had been served on Cornett.

Cornett has also failed to satisfy the second prong of the *LeClair* test as a matter of law. Under the second prong of the *LeClair* test, the defendants' motion for summary judgment must be granted if, interpreting the evidence in the light most favorable to Cornett, it is clear that his selective treatment, if any, was not based on any of the following: 1) impermissible considerations such as race or religion, 2) intent to inhibit or punish the exercise of constitutional rights, or 3) malicious or bad faith intent to injure a person. Cornett has not alleged that any actions of the defendants were motivated by impermissible considerations such as race, religion, or an intent to inhibit or punish the exercise of constitutional rights. With re-

spect to the defendants' intent, the complaint alleges, "That the actions of the defendants was [sic] wanton, wilful, and malicious in that even when I brought a lawsuit against them they continued to pursue their illegal conduct." Complaint ¶ 30. This allegation is wholly conclusory. Neither the complaint nor the plaintiff's submissions contain any allegations of fact that would support any inference of wanton or malicious intent. The Court finds that the possibility of any inference of a malicious or bad faith intent on the part of the defendants is precluded by the fact that the videotape of the July 29 hearing reveals that the Board attempted to verify service of the specifications by reading the proof of service provided by Mahon's lawyer and that Cornett affirmed that the allegedly incorrect address listed on the notice was in fact his own.

▮▮▮▮ On a motion for summary judgment, if a defendant demonstrates that there is an absence of evidence supporting an essential element of the claim on which the plaintiff has the burden of proof, the plaintiff, to avoid summary judgment, must show a genuine issue by presenting evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); FRCP 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). A plaintiff cannot rely on conclusory statements in the pleadings or insupportable allegations made by affidavit. *Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983).[7] The fact that discovery is not complete is no excuse for a plaintiff to rest his or her defense against a summary judgment motion on conclusory allegations. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 251 (2d Cir.1985) ("A bare assertion that evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discovery, is not sufficient to defeat a motion for summary judgment.") (citations omitted).[8]

▮▮▮▮ If a plaintiff needs to make additional inquiries to defend against the motion, the plaintiff may obtain a continuance under Federal Rule of Civil Procedure 56(f). *Wyler,* 725 F.2d at 160 ("If facts essential to support such opposition are not available, the plaintiff may obtain a continuance under Rule 56(f) to permit affidavits to be obtained or discovery to be had. He cannot rely simply on conclusory statements or on contentions that the affidavits in support of the motion are incredible.")[9] Cornett has not sought a continuance under Rule 56(f) and has thus waived any right to further discovery. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985) ("A memorandum is not a substitute for an affidavit under Rule 56(f), and it has been held that the failure to file such an affidavit under Rule 56(f) is by itself enough to reject a claim that the opportunity for discovery was inadequate.") (citations

---

7. *See also, Clements v. County of Nassau,* 835 F.2d 1000, 1005 (2d Cir.1987) (holding that the general rule that summary judgment is usually unwarranted when state of mind is at issue applies only when there is solid circumstantial evidence to prove the plaintiff's case).

8. *See also, Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (same); *L & L Started Pullets, Inc. v. Gourdine,* 762 F.2d 1, 3–4 (2d Cir.1985) (same); *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 106–07 (2d Cir.1981) (upholding grant of summary judgment for the defendants where plaintiff's complaint was based on conclusory allegations and plaintiff's defense to summary judgment motion

amounted to "a desperate plea to allow discovery to substantiate its conclusory allegations").

9. Rule 56(f) provides that:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

omitted).[10]

Moreover, the Court of Appeals for the Second Circuit has instructed the district courts to be "particularly cautious to protect public officials from protracted litigation involving specious claims." *Contemporary Mission,* 648 F.2d at 107; *see also Johnson v. United States,* 680 F.Supp. 508, 517 (E.D.N.Y.1987) ("Bare allegations of malice should not be enough to subject government officials to the burdens of broad-reaching discovery and its disruption of effective government.") (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In this case, there is no evidence—even construing all of the evidence in the light most favorable to Cornett—that the defendants acted with malicious or bad faith intent to injure him. Indeed, the evidence of the hearing shows that they did no such thing.

For the foregoing reasons, the Court grants the defendants summary judgment on the plaintiff's claim that his right to the equal protection of the laws guaranteed by the United States Constitution was violated by the defendants.

## V.

■ Cornett alleges that the defendants violated his constitutional right to due process by failing to give him notice of the specifications to Mahon's objections to his petition prior to the July 29, 1994 Board of Elections hearing. The Fourteenth Amendment provides that "[n]o state shall ... deprive a person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A threshold question in determining whether Cornett has suffered a deprivation of procedural due process is whether he possessed a liberty or property interest in being on the ballot. *See White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1060–61 (2d Cir.) ("In order to succeed on a claim

of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest.") (citing *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976)), *cert. denied,* —— U.S. ——, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993).

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Luck v. Mazzone,* 52 F.3d 475, 477 (2d Cir.1995) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Often, the question of whether a plaintiff possesses a property interest entitled to the protection afforded by constitutional due process is answerable by reference to state law. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.") (footnotes omitted). The defendants argue that New York courts have held that under New York law a person cannot possess a property interest in a public office. However, the decisions the defendants rely on have not involved federal offices and some have noted the relevance of this distinction. *See, e.g., Lanza v. Wagner,* 11 N.Y.2d 317, 324, 183 N.E.2d 670, 673, 229 N.Y.S.2d 380, 385 ("The office held by each of the plaintiffs was concededly created by the Legislature, not by the Constitution, and there is no constitutional inhibition against the mere shortening of the term of an existing statutory office by legislation aimed at the office rather than at its incumbent. Public offices are created for the benefit of the public, and not granted for the benefit of the incumbent, and the office holder has no contractual, vested or property right in the office.") (citations

---

**10.** A continuance pursuant to Rule 56(f) would not be warranted in this case, in any event, because "Rule 56(f) cannot be relied upon to defeat a summary judgment motion 'where the result of a continuance to obtain further information would be wholly speculative.'" *Contemporary Mission,* 648 F.2d at 107 (quoting 6 J. Moore, *Federal Practice* P 56.24 at 56–1438) (ci-

tation omitted); *see also, Carney v. Dep't of Justice,* 19 F.3d 807, 813 (2d Cir.) (holding that district court did not err in denying plaintiff discovery pursuant to Rule 56(f), because the plaintiff's allegations were "grounded in mere speculation"), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994).

omitted), *appeal dismissed,* 371 U.S. 74, 83 S.Ct. 177, 9 L.Ed.2d 163, *cert. denied,* 371 U.S. 901, 83 S.Ct. 205, 9 L.Ed.2d 164 (1962). Nonetheless, if the question of whether there is a property interest in an office created by the Constitution is properly one of federal rather than state law, a person still can not possess a property interest in the federal office, because, "Property interests, of course, are not created by the Constitution." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 (1972). The plaintiff has no property interest at issue in this litigation.

Cornett has not argued that he possesses a liberty interest in running for public office. Although, "[i]n a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed," the parties point to no authority for the proposition that the concept of liberty includes the right to run for public office. *See generally, Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.[11]

Even if Cornett did have a protected property or liberty interest in running for the House of Representatives he was afforded due process by the Board in this case. The Supreme Court has held that:

> '(D)ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. (D)ue process is flexible and calls for such procedural protections as the particular situation demands....

> The essence of due process is the requirement that "a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it."

*Mathews v. Eldridge,* 424 U.S. 319, 334, 348, 96 S.Ct. 893, 902, 909, 47 L.Ed.2d 18 (1976)

(citations and internal quotation marks omitted); *see also Zinermon v. Burch,* 494 U.S. 113, 127–28, 110 S.Ct. 975, 984–85, 108 L.Ed.2d 100 (1990) (collecting cases holding that due process generally requires some kind of hearing before a state deprives a person of liberty or property). Even if Cornett had a property or liberty interest in being on the ballot, the guarantee of due process would not have required the Board to provide him with additional notice of the specifications because he did receive actual notice of the hearing from the Board and of the possibility that specifications would be filed, which provided him with an opportunity, of which he availed himself, to appear at the hearing to contest the objections. Cornett was provided with notice of the case against him and opportunity to meet it.

In *In re Medaglia,* 52 F.3d 451 (2d Cir.1995), the Court of Appeals for the Second Circuit held that a provision of the Bankruptcy Code, 11 U.S.C. § 523(a)(3)(B), does not violate the Due Process Clause of the Fifth Amendment. The provision allows the debts of a creditor to be extinguished in a Chapter 7 bankruptcy liquidation when the creditor has received actual notice of the Chapter 7 petition, but no formal notice was provided. The Court held:

> The fundamental requisite of due process of law is the opportunity to be heard. This means to that end is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action. Appellants do not say that they had no opportunity to be heard or that they had no notice "reasonably calculated" to apprise them of the pendency of Medaglia's Chapter 7 petition.... Appel-

---

11. *Cf. Clements v. Fashing,* 457 U.S. 957, 963–66, 102 S.Ct. 2836, 2843–45, 73 L.Ed.2d 508 (1982) (observing that in the context of equal protection challenges to regulation of access to the ballot, the Court has applied more than rational basis scrutiny only in limited instances and that "Far from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.' *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972).") (Rehnquist, J., writing for a plurality); *Lubin v. Panish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974) (addressing candidate's right to ballot access and framing it in terms of rights of voters: "The interests involved are not merely those of parties or individual candidates; the voters can assert their preferences only through candidates or parties or both and it is this broad interest that must be weighed in the balance. The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters. '(T)he right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot.' *Williams v. Rhodes,* 393 U.S. 23, 31, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968).").

lants contend instead that due process entitled them to a particular kind of notice, which they did not receive.

. . . As the brief from the United States reminds us, it is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right. That general principle is by no means confined to the bankruptcy context. For instance, this court has held that where a claimant demonstrated actual knowledge of the seizure of property in an administrative forfeiture proceeding the government's failure to provide published notice as required by applicable regulations did not amount to a violation of due process.

*Medaglia*, 52 F.3d at 455 (citations and internal quotation marks omitted). Similarly, the fact that Cornett was informed by the Board prior to the filing of the specifications that he should inquire prior to the hearing as to whether specifications were filed was sufficient notice to him that he was required to exercise due diligence to determine what steps were necessary to preserve his rights at the hearing. The sufficiency of the notice is demonstrated by the fact that Cornett actually appeared at the hearing and opposed the objections. Given that Cornett was afforded adequate notice and procedure, he would not have a meritorious due process claim even if he possessed a property or liberty interest in running for office. Due process review of state administrative proceedings extends only to determining whether the state has provided adequate avenues of redress to review and remedy arbitrary action and not to determining whether action was arbitrary or capricious. *See Alfaro Motors, Inc.*, 814 F.2d at 888.

■ Moreover, in the context of a challenge to an election proceeding the prerequisites to a due process claim are pervasive unfairness and inadequate state remedies. *See Powell v. Power*, 436 F.2d 84 (2d Cir. 1970) (holding that there is no due process claim to contest errors in the administration of a congressional election if a fair and adequate state procedure for redress exists, re-

gardless of whether the plaintiff is able to take advantage of the state remedy); *Denis v. New York City Bd. of Elections*, No. 94 Civ. 7077, 1994 WL 613330, at *3 (S.D.N.Y. Nov. 7, 1994) ("To implicate the Due Process Clause, plaintiffs must allege that the election at issue was pervasively unfair, and that state remedies are inadequate to vindicate the plaintiffs' rights. *See Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir.1978) (holding that 'due process is implicated where the entire election process—including as part thereof the state's administrative and judicial corrective process—fails to afford fundamental fairness')."). Cornett could have challenged the denial of his petition in state court pursuant to N.Y. Election Law § 16–102, but chose not to do so. At a preliminary injunction hearing, he conceded that he was aware that he could have brought an action in state court and informed the Court that he had not because he feared that a state court reviewing the petition *de novo* might find further errors in it and that the state courts might be slow and unfair. *See* Tr. of Oct. 3, 1994 at 16–19. In short, despite the existence of a comprehensive and expeditious state court process which attempts to adjudicate election law disputes promptly, the plaintiff seeks to open a second avenue of review. There is no constitutional basis for such a claim.

The Court grants the defendants summary judgment on the plaintiff's due process claim, because Cornett did not have a property or liberty interest in running for the House of Representatives and because, even if he did, he was afforded due process.

## VI.

Given that the Court has granted the defendants summary judgment on the plaintiff's federal constitutional claims, there is no basis for continued federal jurisdiction over this case. Even if the action of the Board of Elections was arbitrary and capricious or in violation of state law, there would be no basis for federal jurisdiction. A § 1983 action is not an appropriate means to review state agency action that is merely arbitrary and capricious. *See FSK Drug Corp.*, 960 F.2d at 11; *Alfaro Motors, Inc.*, 814 F.2d at 888. In *Daly v. Stratton*, 326 F.2d 340 (7th Cir.1964),

the plaintiff alleged that the Illinois State Electoral Board's refusal to certify his name as a candidate for the United States Senate and its failure to notify him of the hearing on his nominating petition violated his Fourteenth Amendment rights. The court held that, "If the Illinois Electoral Board, in the opinion of the plaintiff, did not perform its function in accordance with the law creating it, he was relegated to the courts of Illinois whose province it was to resolve the question he raised." *Daly,* 326 F.2d at 342.

Given that the defendants are entitled to summary judgment on the plaintiff's federal claims, the court declines to exercise pendent jurisdiction over the state law claims. *See Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir.1994) (holding that relinquishment of federal jurisdiction is warranted when there is a complete hegemony of state law claims resulting from dismissal of federal claims); *Robison v. Via,* 821 F.2d 913, 925–27 (2d Cir. 1987) (finding that § 1983 claims should have been summarily dismissed and that pendent jurisdiction over state law claims was not warranted).

For the foregoing reasons, the Court grants the defendants summary judgment on the plaintiff's claims that he was deprived of his rights to equal protection and due process guaranteed by the United States Constitution and the Court orders that judgment be entered dismissing this action.

**SO ORDERED.**