Orlando Perez NAPOLEONI, Plaintiff,

v.

Superintendent SCULLY of Green Haven Correctional Facility, and Commissioner Coughlin, Thomas, of the New York State Department of Corrections, Defendants.

No. 93 Civ. 8945 (JGK).

United States District Court,
S.D. New York.

July 10, 1996.

Orlando Perez Napoleoni, Warwick, NY, pro se.

Vincent Leong, Assistant Attorney General of the State of New York, New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff Orlando Perez Napoleoni brings this action pursuant to 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated when he was exposed to asbestos while performing on a work detail and that his First Amendment rights were violated when he was transferred to another correctional facility in retaliation for preparing to file this lawsuit. The defendants move for summary judgment dismissing this action pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the defendants' motion is granted.

### I.

The plaintiff Orlando Perez Napoleoni is an inmate under the custody of the New York State Department of Correctional Services ("DOCS"). Defendant Charles Scully is the former superintendent of the Green Haven Correctional Facility ("Green Haven"), and defendant Thomas Coughlin is the former DOCS commissioner. The events alleged in this action occurred while the plaintiff was incarcerated at Green Haven.

When Napoleoni was incarcerated at Green Haven, he performed recycling and maintenance duties at the facility. (Defs.' 3(g) ¶ 2; Napoleoni Dep. at 10, 12.) On December 8, 1992, Napoleoni was on a ladder attempting to fix a roof at the Green Haven's "J School" when "fragments was [sic] hitting me. Dirt, like dust, was hitting me in my head and my hair and in my face." (Defs.' 3(g) ¶ 3; Napoleoni Dep. at 10.) Napoleoni's civilian maintenance supervisor John _____,[1] who was at the scene, told the plaintiff to get down from the ladder. (Defs.' 3(g) ¶ 4; Napoleoni Dep. at 10.) The supervisor went up the ladder and "looked at something on the pipes or something up there." (Defs.' 3(g) ¶ 5; Napoleoni Dep. at 10.) John then told Napoleoni that the substance was falling on him was asbestos. (Defs.' 3(g) ¶ 6; Napo-

---

1. Napoleoni was unable to provide the last name of his supervisor. (Napoleoni Dep. at 10.)

leoni Dep. at 10.) Napoleoni did not know it was asbestos until John told him so. (Defs.' 3(g) ¶ 6; Napoleoni Dep. at 10, 14.) John then immediately told his own supervisor about the asbestos, and Napoleoni never worked on the ceiling tiles again. (Defs.' 3(g) ¶ 12; Napoleoni Dep. at 16, 17.)

Before December 8, 1992, Napoleoni had fixed ceiling tiles "about ten times." (Defs.' 3(g) at 7; Napoleoni Dep. at 12–13.) The ceiling tiles were often broken by the rain and by the police checking for contraband and weapons. (Defs.' 3(g) ¶¶ 9, 10; Napoleoni Dep. at 12.) John was the plaintiff's supervisor each time the plaintiff repaired the tiles. Napoleoni claims that prior to December 8, 1992, John was aware that the ceiling tiles contained asbestos. (Napoleoni Affirmation dated Feb. 6, 1996 ("Napoleoni Aff.") ¶ 5.)

On December 10, 1992, Napoleoni was examined at the medical clinic at Green Haven. (Napoleoni Dep. at 19.) Around January 4, 1993, Napoleoni was sent to St. Luke's Hospital for further examination. (Defs.' 3(g) ¶ 14; Napoleoni Dep. at 20–21.) The plaintiff testified at his deposition that the results of this examination were "pretty good.... My lungs wasn't that bad." (Defs.' 3(g) ¶ 15; Napoleoni Dep. at 21–22.) The plaintiff does not claim that he is currently suffering from any medical problems as a result of his exposure to asbestos, but argues that the effects of this exposure may not be known for quite some time. (Napoleoni Aff. ¶ 6.)

There is no evidence indicating that defendants Coughlin or Scully directly assigned Napoleoni to repair ceiling tiles. (Defs.' 3(g) ¶¶ 18, 20.) Napoleoni alleges, however, that these defendants knew that Green Haven had an asbestos problem because prior to the December 8, 1992 incident, Green Haven had established a training program in which an outside civilian taught a class of inmates how to remove asbestos safely. (Defs.' 3(g) ¶ 17; Napoleoni Dep. at 23–25.) There is no evidence, however, that any asbestos was ever removed from Green Haven prior to the plaintiff's transfer from that facility. (Napoleoni Dep. at 25.)

Napoleoni was transferred from Green Haven to the Mid–Orange Correctional Facility shortly after the December 8, 1992 incident but before he filed a complaint to commence this lawsuit. (Defs.' 3(g) ¶ 21; Napoleoni Dep. at 27–28.) The plaintiff claims that Scully was aware that he was planning to file this lawsuit because "[t]here was real, real little that that man didn't know." (Defs.' 3(g) ¶ 22; Napoleoni Dep. at 30.) Napoleoni claims that the unusual timing of his transfer makes him suspect that he was transferred in retaliation for filing this complaint. Specifically, the plaintiff alleges that "they packed me up on the 5th, a Sunday which is rarely heard of, and they moved me on a Monday at 5:30 in the morning to Downstate Corr. Fac. and then from there to Mid–Orange Corr. Fac." (Defs.' 3(g) ¶ 23; Napoleoni Letter dated Nov. 15, 1995 ("Ltr.") ¶ 11.) Napoleoni does not claim that Coughlin was at all involved in this transfer. (Defs.' 3(g) ¶ 24; Napoleoni Dep. at 29.)

## II.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d

Cir.1994). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether their are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Because the plaintiff appears *pro se*, the complaint, "however inartfully pleaded," must be held to less stringent standards than formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Patrick v. LeFevre*, 745 F.2d 153, 160 (2d Cir.1984).

On a motion for summary judgment, once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. *See* Fed.R.Civ.P. 56(e); *see also Cornett v. Sheldon*, 894 F.Supp. 715, 724 (S.D.N.Y.1995) ("[T]he plaintiff, to avoid summary judgment, must show a genuine issue by presenting evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53)). A plaintiff must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983); *Cornett*, 894 F.Supp. at 724.

### III.

Section 1983 imposes civil liability on any person who, acting under the color of state law, abridges rights secured by the United States Constitution or by federal law. 42 U.S.C. § 1983.[2] There is no dispute in this case that the defendants' alleged actions arose under color of state law. The only issue is whether these actions deprived the plaintiff of his constitutional rights. The plaintiff alleges two separate constitutional violations. First, he claims that defendants Coughlin and Scully violated his Eighth Amendment rights by exposing him to asbestos. Second, the plaintiff alleges that defendant Scully violated his First Amendment rights by transferring him to another prison in retaliation for commencing this action.

### A.

The defendants are entitled to summary judgment with respect to the plaintiff's Eighth Amendment claim because the plaintiff has made no showing that they were personally involved in the alleged Eighth Amendment violation.

■ Although it is undisputed that the defendants had direct or indirect supervisory authority over Green Haven, this fact alone is insufficient to hold them personally liable for damages for constitutional violations alleged under § 1983. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Supervisors may be held liable only if they are personally involved in actions that cause the deprivation of constitutional rights. *Id.* Personal involvement for these purposes means "[1] direct participation, or [2] failure to remedy the alleged wrong after learning of it, or [3] creation of a policy or custom under which unconstitutional practices occurred, or [4] gross negligence in managing subordinates." *Id.; Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).

■ The plaintiff has failed to present any evidence to support his claim that either Coughlin or Scully was personally involved in the alleged deprivation of his constitutional rights. There is no evidence proffered that Coughlin or Scully personally participated in the alleged Eighth Amendment violation; there is no evidence that either Coughlin or Scully was aware that there was asbestos in the area where the plaintiff was working on

2. Title 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

December 8, 1992, or even that they assigned him to work in that area.

The plaintiff has also failed to show that the defendants failed to remedy the allegedly hazardous situation once they learned of it. Although the plaintiff alleges that John, his supervisor, had been aware that there was asbestos in the ceiling tiles, the plaintiff does not allege that Coughlin or Scully had knowledge that asbestos was present there. The fact that there was a class that taught inmates how to remove asbestos does not without more support the inference that the defendants were aware that there was asbestos in the area where the plaintiff was working. The plaintiff does not allege that any asbestos was ever removed from Green Haven prior to his transfer from that facility. (Napoleoni Dep. at 25.) There is no evidence that the defendants learned that Napoleoni was exposed to asbestos until after the December 8, 1992 incident. It is undisputed that after this incident, work in the area containing asbestos ceased immediately, and Napoleoni was never exposed to asbestos again.

Napoleoni does not allege and there is no evidence that the defendants had created a policy or custom of exposing inmates to asbestos, or that they were grossly negligent in managing their subordinates. Accordingly, because the plaintiff has failed to show that the defendants were personally involved in the alleged violation of his Eighth Amendment rights, the plaintiff's Eighth Amendment claim must be dismissed.

■ Moreover, because Scully and Coughlin were not personally involved in the alleged violation of Napoleoni's Eighth Amendment rights, Napoleoni is unable to show that the defendants acted with deliberate indifference to a serious risk to his health. The plaintiff's burden in proving an Eighth Amendment violation consists of both an objective and subjective element. The plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard and that the charged prison officials acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Helling v. McKinney*, 509 U.S. 25,

32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); *Hathaway v. Coughlin*, 37 F.3d 63, 66–67 (2d Cir.1994). The latter requirement has been defined as "deliberate indifference." *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1977. The deliberate indifference element requires that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id.* at ——, 114 S.Ct. at 1979; *see also Branham v. Meachum*, 77 F.3d 626, 631 (2d Cir.1996). Here, there is no evidence that the defendants were aware that Napoleoni was working in an area containing asbestos. As such, the plaintiff is unable to demonstrate that the defendants acted with deliberate indifference to a serious risk to the plaintiff's health, a showing that is necessary to establish an Eighth Amendment violation.

### B.

The plaintiff also alleges that his First Amendment rights were violated when he was transferred from Green Haven in retaliation for preparing this lawsuit.

Although the complaint does not clearly indicate against whom this claim is brought, the plaintiff's deposition indicates that this claim is brought solely against defendant Scully. (Napoleoni Dep. at 29.) By the plaintiff's own admission, defendant Coughlin was not personally involved in transferring the plaintiff from Green Haven. (Napoleoni Dep. at 28–29.)

■■ Prison officials have broad discretion to transfer prisoners to another facility. *Montanye v. Haymes*, 427 U.S. 236, 243, 96 S.Ct. 2543, 2547–48, 49 L.Ed.2d 466 .(1976); *Meriwether v. Coughlin*, 879 F.2d 1037, 1045–46 (2d Cir.1989). An inmate may not, however, be transferred solely in retaliation for his exercising his constitutional rights. *Meriwether*, 879 F.2d at 1046; *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987); *Mabery v. Coughlin*, 93 Civ. 3221, 1996 WL 209998, at *4 (S.D.N.Y. Apr. 30, 1996) (Preska, J.).

■ The plaintiff has failed to present any evidence that would permit a finder of fact to conclude that he was transferred in retalia-

tion for exercising his First Amendment rights. First, Napoleoni has not presented any evidence that Scully was even aware that Napoleoni was planning to commence this lawsuit at the time he was transferred. Napoleoni admits that he was transferred before he filed or served his complaint. The sole basis for Napoleoni's belief that Scully had knowledge of the complaint before it was filed is that "[t]here was real, real little that that man didn't know." This is insufficient to prove that Scully was aware of this particular complaint. *See Mabery,* 1996 WL 209998, at *5 (granting summary judgment dismissing claim for retaliatory transfer where plaintiff failed to allege facts indicating that the defendant was aware prior to the transfer that the plaintiff was filing a grievance).

Second, even if Napoleoni had presented evidence that Scully was aware of the complaint before it was filed, Napoleoni has failed to present any evidence that Scully transferred him with a retaliatory motive. Napoleoni appears to allege that his transfer was marked by procedural irregularities. He alleges that "they packed me up on the 5th, a Sunday which is rarely heard of, and they moved me on a Monday at 5:30 in the morning to Downstate Corr. Fac. and then from there to Mid–Orange Corr. Fac." (Ltr. ¶ 11.) This allegation alone would not support the inference that Scully transferred the plaintiff in retaliation for preparing to commence this lawsuit. Indeed, the plaintiff has not presented any evidence indicating a transfer under these circumstances is in fact irregular. It is well-established that in response to a motion for summary judgment the party resisting summary judgment must proffer evidence and not rely on the pleadings and conclusory allegations and speculation. *See Ying Jing Gan,* 996 F.2d at 532; *Wyler,* 725 F.2d at 160; *Cornett,* 894 F.Supp. at 724. Napoleoni has failed to proffer that evidence.

## CONCLUSION

For the reasons stated above, the defendant's summary judgment motion is GRANTED. The Clerk of the Court is directed to enter such a judgment and to close the above-captioned action.

**SO ORDERED.**