**Earl DOYLE, Plaintiff,**

v.

**Philip COOMBE, Commissioner, New York State Department of Correctional Services, et al, Defendants.**

No. 92–CV–6492L.

United States District Court,
W.D. New York.

Aug. 26, 1997.

Jennifer M. Demert, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for Plaintiff.

Rene Davison, Office of the New York State Attorney General, New York State Department of Law, Rochester, NY, Sean Edward Gleason, New York State Attorney General's Office, Deptartment of Law, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

In this action brought pursuant to 42 U.S.C. § 1983 plaintiff Earl Doyle ("Doyle") alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by exposing him to dangerous levels of asbestos and by failing to provide necessary medical care. Doyle was a prisoner at the Elmira Correctional Facility ("Elmira") during the relevant time period. The defendants, Philip Coombe, Thomas A. Coughlin, III, Larry Pocobello, George Bartlett, John Maloy, Mark Lyman, Robert McConnell, Willis Shutt, Jerome Fitzpatrick, and ten "John Does" were employees or agents of the New York State Department of Correctional Services ("DOCS"). Except for Coombe, who is sued in his official capacity, the defendants are sued in their individual capacities.

Doyle commenced this action, *pro se*, on July 14, 1992. By Order dated May 17, 1993 he was assigned counsel. Doyle seeks money damages and medical monitoring costs from all defendants.[1]

## BACKGROUND

Doyle was an inmate at Elmira from March 1990 to October 1992. During that time he worked at the facility as a maintenance worker and plumber. He worked alongside defendant Fitzpatrick, a civilian plumber employed by DOCS. Doyle claims that he was exposed to asbestos in three ways. First, he alleges that he was exposed while performing his normal duties, specifically, while removing asbestos-containing insulation from around heating and water pipes. This exposure occurred in prison locations that later became sites for asbestos removal. Doyle Affidavit, dated January 24, 1997 ("Doyle Aff."), at ¶ 8. When he complained to the Corrections Officers [the "John Doe" defendants] they allegedly told him that he would be disciplined if he continued to complain about his working conditions. *Id.* at ¶ 8.

Secondly, Doyle asserts that he was forced to work in areas where asbestos abatement projects were in progress. Specifically, he asserts that "[a]lthough I was not a member of any inmate crew involved in the asbestos removal program, ... I was ordered by ...

---

1. As pleaded, Doyle seeks injunctive relief from Coombe, in the form of maintaining a court-supervised fund to reimburse costs of medical monitoring. While framed as a request for equitable relief, it is in fact nothing more than a request for money damages. Doyle does not seek establishment of a fund that—in addition to reimbursing costs—serves to gather and disseminate information on asbestos-related disease. *See, e.g., Gibbs v. E.I DuPont De Nemours & Co.,* 876 F.Supp. 475, 481 (W.D.N.Y.1995)("A court-administered fluid which goes beyond payment of the costs of monitoring ... to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature ...."). Doyle seeks nothing more than money. Thus, I view his claim against Coombe as one for money damages and will treat it as such. *See Werlein v. United States,* 746 F.Supp. 887 (D.Minn.1990)("Payment of cash by one party to reimburse other parties for costs incurred is not injunctive relief"), *vacated in part on other grounds,* 793 F.Supp. 898 (D.Minn.1992).

the Corrections Officers [the John Doe defendants] to enter into areas in which signs were visibly posted warning that asbestos and asbestos-containing materials were present and that exposure to same without protective gear was dangerous." Doyle Aff. at ¶ 10.

Finally, Doyle claims that he continually was exposed to asbestos while confined to his cell because "(t)hroughout 1992, asbestos and asbestos containing materials were left in the basement of Cell Block I, which is an area open to the same air space as the cells." Doyle Aff., at ¶ 11.

Doyle claims that he suffered skin rashes from June 1990 to September 1991 and occasional shortness of breath and coughing since November 1992. There is no medical evidence in the record establishing a casual relationship between the activities at Elmira in 1990–1992 and Doyle's present medical condition.

Defendants concede that Elmira did house asbestos in certain areas of the facility. Defendants also admit that during the relevant time period there was an asbestos abatement program in progress at the facility. However, defendants assert that only specially trained and certified members of the abatement teams were permitted to handle asbestos during the project. Doyle was not such a trained and certified worker and, therefore, he was not authorized to be involved in the abatement project. Defendants deny Doyle's assertion that he was forced to work as part of the abatement project.

Furthermore, defendants assert that except for Fitzpatrick, none of them knew Doyle or had ever heard of any of his concerns. Only Fitzpatrick, as Doyle's supervisor, had any direct contact with him. Fitzpatrick asserts that there was no occasion when either he or Doyle worked with asbestos and that he, Fitzpatrick, never requested or felt the need for any protective equipment. Fitzpatrick also denies receiving any request from Doyle for this equipment. Fitzpatrick Affidavit, dated November 26, 1996, ("Fitzpatrick Aff.") at ¶ 11.

Finally, defendants assert that during the relevant time period Doyle failed to seek any medical care whatsoever, failed to seek a change in jobs, and failed to make any official grievance to prison authorities. Without any knowledge of his concerns, it was impossible for prison authorities to investigate his allegations at the appropriate time.

### EIGHTH AMENDMENT STANDARDS

■ A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Furthermore, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling*, 509 U.S. at 31, 113 S.Ct. at 2480. This includes environmental hazards that pose an unreasonable risk of serious damage to future health. *Id.* at 33–35, 113 S.Ct. at 2480–82.

■ Proof of mere negligence, however, will not give rise to a constitutional violation. *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir.1991)(citing *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). Rather, a plaintiff must demonstrate that defendants acted with deliberate indifference with respect to his safety or with a specific intent to cause him harm. *Id.*

■ To prevail on an Eighth Amendment claim a plaintiff must satisfy both prongs of a bifurcated standard, i.e., he must satisfy both an objective and subjective component. See *Wilson*, 501 U.S. at 298–300, 111 S.Ct. at 2323–25. First, objectively, the deprivation alleged must be "sufficiently serious" to be considered cruel and unusual. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (citing *Wilson*, 501 U.S. at 298, 111 S.Ct. at 2323–24); *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir.1993). For a claim based on a failure to prevent harm, an inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977.

As for the subjective component, a plaintiff must show that defendants had a sufficiently culpable state of mind; that is that they knew of the risk and operated with "deliberate indifference" to the inmate's health or safety. *Id.*

### THE PRESENT MOTIONS

Defendants presently move for summary judgment on the grounds that Doyle has failed to satisfy the substantive criteria for an Eighth Amendment claim. Specifically, defendants assert that Doyle cannot show that they acted with the requisite 'deliberate indifference.' Defendants also assert that, except for Fitzpatrick, none was personally involved in the alleged constitutional violations.

Doyle opposes, asserting that genuine issues of material fact exist as to whether defendants acted with deliberate indifference and also that further discovery is necessary to oppose defendants' motion. Additionally, Doyle cross moves for leave to amend his complaint to identify the "John Doe" defendants.

### Qualified Immunity

■ Defendants have not raised qualified immunity as a basis for summary judgment. However, I find that Doyle's claims are barred in part by the doctrine of qualified immunity, and, thus, invoke my inherent power to grant summary judgment *sua sponte*, in part, based upon the defense of qualified immunity. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir. 1983)("[a] court may grant summary judgment *sua sponte* when it is clear that a case does not present an issue of material fact").

■ Except for defendant Coombe[2], all defendants are sued in their individual capacity. Thus, they are entitled to assert personal immunity defenses such as qualified immu-

nity. *See Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir.1988).

"Public officials are entitled to qualified immunity from claims for damages if (1) their conduct did not violate federal statutory or constitutional rights that were clearly established at the time, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Brown v. City of Oneonta*, 106 F.3d 1125, 1130–31 (2d Cir. 1997). In determining whether a right was clearly established, a district court in the Second Circuit should consider " '(1) whether the right in question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.' " *Id.* at 1131 (citing *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)).

"Summary judgment in favor of public officials may be appropriate when a qualified immunity defense is based upon a showing that it was not clear at the time of the officials' acts that the interest asserted by the plaintiff was protected by federal law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993), *quoted in LaBounty v. Coughlin*, 1996 WL 711497, *1 (S.D.N.Y.1996). " 'To defeat an official's claim of qualified immunity, the individual's right must have been clearly established at the time of the alleged violation.' " *LaBounty*, 1996 WL 711497 at *1 (citations omitted).

■ The question before me, thus, is whether during the 1990–1992 time period it clearly was established by the United States Supreme Court or the United States Court of Appeals for the Second Circuit that exposure to asbestos was unlawful. I find that it was not. No Supreme Court or Second Circuit decision had yet established that exposure to

---

2. Coombe is sued in his official capacity. "The Eleventh Amendment acts as a bar to § 1983 actions for money damages against state officials in their official capacity." *Holland v. Lane*, 1995 WL 398891, *3 (N.D.Ill.1995)(citing *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Because I have determined that Doyle's action against Coombe is, in fact, an action for money damages, this action as against Coombe is barred by the Eleventh Amendment and all claims against Coombe are dismissed.

asbestos (or any other substance causing delayed manifestation of harm) could present a colorable Eighth Amendment claim. *See La-Bounty*, 1996 WL 711497 at * 2. While the United States Court of Appeals for the Eleventh Circuit acknowledged in 1990 that prison officials' knowing exposure of an inmate to crumbling asbestos constituted a constitutional violation,—*see Powell v. Lennon*, 914 F.2d 1459, 1463–64 (11th Cir.1990)—Eleventh Circuit law is not controlling precedent for purposes of qualified immunity. See *La-Bounty*, 1996 WL 711497 at *2 (citing *Richardson*, 5 F.3d at 623).

It was not until 1993 that the United States Supreme Court held that an Eighth Amendment claim may be established from exposure to substances which might cause a delayed injury. *See Helling v. McKinney*, 509 U.S. at 35, 113 S.Ct. at 2481–82 (holding that an inmate's forced exposure to second hand cigarette smoke may, under the right circumstances, constitute an Eighth Amendment violation). Similarly, in 1993 the Southern District of New York recognized that, in certain circumstances, exposure to asbestos could present a colorable Eighth Amendment claim. *See Chelewsky v. Sielaff* 1993 WL 473746 (S.D.N.Y.1993). However, Doyle's alleged exposure predated both these cases. (Moreover, a district court case does not establish the existence of a federally protected right even in its own Circuit. *See LaBounty*, 1996 WL 711497 at *2).

Thus, I find that qualified immunity protects the defendants from liability with respect to Doyle's alleged exposure while performing his normal plumbing and maintenance activities, including any exposure to asbestos insulation on pipes, and his alleged exposure while confined to his cell. His claims based upon these allegations must be dismissed because these types of exposure were not recognized clearly as unlawful prior to 1993. *See id.*, at *2 ("this Court finds that the unlawfulness of exposing plaintiff to crumbling asbestos was not 'clearly established' under federal law at the time of his 1991–1992 confinement . . . ."); *see also Holland v. Lane*, 1995 WL 398891, *5 (N.D.Ill.1995)("this court is unable to conclude that at any time during

plaintiff's incarceration [1989–1991] . . . a 'sufficient consensus' had been reached that exposing inmates to airborne asbestos constituted an Eighth Amendment violation").

■ However, I cannot find that the defendants are protected by qualified immunity with respect to Doyle's assertions that he was forced to enter areas clearly marked and posted as being dangerous. While failing to protect inmates from possible exposure to asbestos has not been clearly established as unlawful prior to 1993, actively forcing an inmate to work under known dangerous conditions certainly was. In *Helling, supra*, the Supreme Court recognized that protecting inmates against future harm was not a "novel proposition." *Id.* at 33, 113 S.Ct. at 2480. Well before 1993 it was clearly established that "[t]he [Eighth] Amendment . . . requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety' "—*id.* at 33, 113 S.Ct. at 2480–81 (citing *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989))—and that "[i]t is 'cruel and unusual punishment to hold convicted criminals in unsafe conditions.' " *Helling*, 509 U.S. at 33, 113 S.Ct. at 2481 (citing *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)).

Thus, I find a distinction between Doyle's claims that he was exposed to asbestos when prison officials passively failed to protect him during his normal day to day activities, versus his claim that he was directed to enter areas plainly posted as being dangerous. While it was not clearly established that officials were obligated to protect Doyle from exposure while working and from airborne dust in his cell, there is no question that officials were obligated to protect Doyle from known and obvious dangers. Accordingly, no qualified immunity exists with respect to Doyle's claim that he was forced to enter into asbestos abatement areas without protective equipment.

### Personal Involvement

■ However, the claim that Doyle was forced to work in dangerous areas must be dismissed as well. Doyle's assertion that he was forced to enter posted areas is asserted against the John Doe defendants only, rather

than any named defendant. *See* Doyle Aff. at ¶ 10 ("I was ordered by a number of the [John Does] to enter into areas in which signs were visibly posted warning that asbestos and asbestos-containing materials were present and that exposure to same without protective gear was dangerous.") Doyle does not assert that any of the named defendants, including defendant Fitzpatrick, ordered him to work in the posted areas.

No direct liability can attach to unnamed individuals. Thus, Doyle's claim against the named defendants, based upon this allegation, can survive only if there is evidence that any of the named defendants was in some other way 'personally involved' in the alleged deprivation.

It is well settled that "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Under the law of this Circuit, where defendants have not directly participated in the event, a plaintiff may establish personal involvement by showing that the defendants learned of the wrong and failed to correct it; that they created or allowed a policy to exist that harmed the plaintiff; or that they acted with "gross negligence" in managing subordinates. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).

With respect to defendants Shutt, McConnell, Lyman, Maloy, Bartlett, Pocobello, and Coughlin (the "supervisory defendants"), each has asserted in his affidavit that he did not know anything about the forced exposure. Indeed, each asserts that he did not know Doyle or had even heard of him.

Doyle does not assert that he gave actual notice to the supervisory defendants regarding his exposure to asbestos. However, Doyle asserts that the supervisory defendants' position of authority put them on notice when he complained to the "John Does", and that as supervisory officials they allowed a policy to exist that exposed plaintiff to harmful amounts of asbestos and asbestos containing material.

Doyle's allegations in this regard are insufficient. Essentially Doyle seeks to impose liability here on a *respondeat superior* theory which cannot form the basis for liability in actions alleging constitutional violations. There is no evidence whatsoever that any complaints (if made regarding the forced exposure) were relayed to the supervisory officials; there is no evidence whatsoever that the supervisory officials were negligent; and there is no evidence whatsoever that there was a policy or practice of permitting inmates to be exposed to asbestos. Indeed, the evidence establishes the contrary. The existence of the asbestos abatement project and the precautions followed as a result demonstrate that the only existing "policy" was one to protect inmates from exposure.[3] See *Napoleoni v. Scully*, 932 F.Supp. 559, 563 (S.D.N.Y.1996)("[t]he fact that there was a class that taught inmates how to remove asbestos does not without more support the inference that the defendants were aware that there was asbestos in the area where the plaintiff was working.")

3. Doyle contends to have circumstantial evidence, in the form of a memo and a letter, that at least some of the defendants were on notice of the substantial risk of harm to which he was being exposed. The memo, dated December 16, 1991, is from Elmira's Acting Plant Superintendent to Elmira's Maintenance and Powerhouse Staffs and concerns facility policy regarding "encountering insulation that is suspected of containing asbestos." Specifically, the memo forbids all Maintenance and Powerhouse workers from handling asbestos and refers to "[a] recent event involving asbestos insulation and the inherent health hazards stemming from the mishandling of this material. . . . " It further instructs that "[w]hen encountering insulation that is suspected of containing asbestos, you are to halt work immediately and notify your supervisor."

The letter, dated August 3, 1992, is from Elmira's Deputy Superintendent, Robert A. Guzman, to the EPA. This letter describes the asbestos abatement project at the Elmira facility, noting that the project components have been so minor as to eliminate any need to report them to the EPA. Attached is a listing of completed projects at the facility.

These documents describe the abatement procedures and protocol. Neither mentions Doyle or any inmate complaints or concerns. Thus, standing alone, neither provides the necessary nexus between the abatement project and Doyle's alleged forced exposure.

Thus, because there is no evidence that the supervisory defendants were personally involved in the alleged forced exposure, Doyle's claim is dismissed as against them.[4]

The only remaining defendant is Fitzpatrick. Doyle alleges that "[a]fter I discovered that I was being exposed to asbestos and asbestos-containing material, I advised Fitzpatrick that I believed that it was unsafe for me to be in contact with asbestos and asbestos-containing material." Doyle Aff. at ¶ 12. Fitzpatrick "informed me that I would have to be exposed to asbestos and asbestos-containing materials for years before I would be in danger of developing an asbestos-related illness." *Id.*

■ Doyle's assertion fails to clarify precisely what he complained to Fitzpatrick about. If he complained about his exposure during normal work activities, or his exposure while confined to his cell, Fitzpatrick is protected from liability by qualified immunity, as discussed above. Even if Doyle complained to Fitzpatrick about the John Does forcing him to enter posted areas, there is no evidence that Fitzpatrick was in a supervisory position vis-a-vis the John Does, or possessed any authority to correct their actions. Fitzpatrick was a civilian employee, working as a plumber at Elmira. It is not clear that he had any supervisory authority at all, except over Doyle. Thus, I cannot find that Fitzpatrick had any authority to correct the officers' behavior or alter any existing policy. Accordingly, I find that Doyle has failed to establish Fitzpatrick's personal involvement in the John Does' actions.

■ However, even if Doyle adequately has established personal involvement by Fitzpatrick, I find that this action against Fitzpatrick alone cannot be sustained. To the extent there is any evidence of deliberate indifference by any of the defendants, it is on the part of the John Does. They were the only ones allegedly forcing Doyle to enter into posted areas. Unfortunately for Doyle, he has failed to identify those individuals and is thus now precluded from asserting claims against them. See discussion of Doyle's motion to amend, *infra*. With respect to Fitzpatrick, there simply is insufficient evidence of deliberate indifference to sustain Doyle's claims.

Fitzpatrick asserts that he and Doyle never worked with asbestos, that they were never asked to work with or around asbestos, that they were aware of asbestos dangers and were directed not to work with asbestos, and finally, that he (Fitzpatrick) never felt the need for protective clothing and that Doyle never expressed any concerns about asbestos or requested any protective equipment either. Fitzpatrick Aff.

Doyle's assertions to the contrary do not raise genuine issues of material fact as to whether Fitzpatrick was "deliberately indifferent" to a substantial harm. While it is true that, generally, it is improper to grant summary judgment when a litigant's state of mind is in question, *see Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984), no case ever would be ripe for summary judgment if the court allowed a complaint to succeed based only on an allegation of an improper state of mind. *See LaBounty v. Coughlin*, 1996 WL 525865, *3 (S.D.N.Y.1996) (noting that even a *pro se* party's "bold assertion," completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment) (citations omitted). There must be evidence such that a rational trier of fact could find for the plaintiff.

Here, there is simply no evidence whatsoever that Fitzpatrick intentionally or wantonly permitted Doyle to be exposed to asbestos, intending to cause him harm. At best, Fitzpatrick may have been uninformed, negligent or stupid. But there is no evidence that he was deliberately indifferent to Doyle be-

---

4. Doyle disputes that defendants Shutt, Maloy and McConnell did not know of him. Doyle asserts that Shutt, as Fitzpatrick's supervisor, had met him on several occasions. Doyle further asserts that Maloy and McConnell knew him because they processed his security clearance, necessary for him to possess certain tools needed for his job. Doyle Aff. at ¶¶ 19, 20. Doyle's assertions are insufficient to establish personal involvement in the alleged Eighth Amendment violation because even if true, such knowledge is not related to the claim. Mere knowledge of the existence of Doyle, even when coupled with knowledge about the asbestos abatement project, does not provide the required nexus with Doyle's allegation of forced exposure.

ing exposed to dangerous levels of asbestos. *Cf. Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir.1995)(where a report of asbestos violations, a fire marshall's order to remove asbestos debris, and prison officials' admissions that they knew of exposed asbestos comprised evidence sufficient to withstand defendants' motion for summary judgment on issue of subjective intent). Thus, I find that Doyle has failed to raise genuine issues of material fact concerning Fitzpatrick's state of mind, for purposes of defeating defendants' motion for summary judgment.

### Doyle's Request for Additional Discovery

■ Alternatively, Doyle asks that, before considering defendants' motion, this Court allow him to conduct further discovery, pursuant to Fed.R.Civ.P. Rule 56(f). Doyle asserts that he cannot adequately oppose defendants' motion without deposing defendants about their knowledge of the alleged exposures. I deny this request. This action is over five years old. Plaintiff has been represented by counsel since May 1993, and the time within which to conduct the necessary discovery is more than sufficient. A scheduling order was entered on September 26, 1995 allowing the parties to conduct discovery to March 1, 1996. Shortly after discovery was to close, on March 15, 1996, the Court gave the parties six months additional time to complete discovery, until October 1, 1996. Thereafter, plaintiff obtained an additional two month extension for discovery until December 1, 1996. Plaintiff has identified no justifiable reason as to why all of the necessary discovery could not have been completed during the three years that counsel has been in the case and during the times provided in the discovery scheduling orders.

■ Moreover, I find that such depositions are unnecessary. Each supervisory defendant has stated in an affidavit that he knew nothing of Doyle and/or Doyle's complaints or concerns. Fitzpatrick has stated that Doyle never complained to him, and that he never relayed any complaints to anyone else. While it is true that depositions allow for greater factual exploration than can be obtained from an affidavit, I find that in this case there is no reason to believe any defendant would provide significantly differ-

ent information in a deposition than was represented in his affidavit. *M.B. # 11072–054 v. Reish*, 119 F.3d 230, 232 (2d Cir.1997). Accordingly, I deny plaintiff's request for additional discovery.

### Doyle's Motion for Leave to Amend the Complaint

■ Finally, Doyle seeks leave to amend the complaint, pursuant to Fed.R.Civ.P. 15(c), to add Officers Barto, DiFasi, Bannon, Davenport, Augustine, Coleman, Rogerio, Witkowski, Dinkleberger, and Santiago as defendants in place of the currently named "John Doe" defendants. Doyle asserts that "but for a mistake as to the exact identity" of the "John Doe" defendants, they would have been named in the original complaint. Essentially, Doyle's claim is that now that the officers' identities are known, they should be substituted for the "John Doe" defendants. Doing so, however, would be in direct contravention of clear Second Circuit precedent.

Doyle concedes that the statute of limitations applicable to his § 1983 claim has expired. Therefore, he may amend his complaint now to add the additional defendants only if the amendment would "relate back" to the date his original complaint was filed. *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 35 (2d Cir.1996).

An amendment to a pleading that attempts to add a new party "relates back" to the date of the original complaint only if: (1) the claim arises out of conduct set forth in the original pleading; (2) the party to be added received notice such that it will not be prejudiced in maintaining a defense; (3) the party to be added should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third requirements are fulfilled within the period prescribed in Fed.R.Civ.P. 4(m) for service of process. *See Soto*, 80 F.3d at 35; *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468–69 (1995), *modified*, 74 F.3d 1366 (2d Cir.1996).

It is the third requirement that proves fatal to Doyle's motion. The Second Circuit has held that "Rule 15(c) explicitly allows the relation back of an amendment due to a

'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Barrow*, 74 F.3d at 1367. Therefore, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow*, 66 F.3d at 470; *see also Covington v. City of New York*, 1997 WL 311922, *1 (S.D.N.Y.1997) (denying plaintiff's request to amend complaint to identify one of "12 Unknown Members of the Manhattan South Tactical Narcotics Team" because his failure to identify them earlier was "clearly due to his lack of knowledge of their names rather than due to factual or legal mistake"); *Daniels v. Loizzo*, 174 F.R.D. 295, 300 (S.D.N.Y.1997) (noting that attempt to supply names would not be allowed where the amendment would only correct plaintiff's lack of knowledge, not a mistake); *Steiner v. City of New York*, 920 F.Supp. 333, 341–42 (E.D.N.Y.1996).

Here, Doyle failed to specify these ten officers' names in his original complaint or to add them within the applicable statute of limitations. Doyle's actions in this regard resulted not from a "mistake of identity," but from a clear lack of knowledge of their identities. Accordingly, the requirements of Rule 15(c) for relation back are not met and Doyle's motion for leave to amend the complaint is denied.

### CONCLUSION

For all the above reasons, defendants' motion for summary judgment (# 33) is GRANTED in its entirety as to all defendants. Plaintiff's cross motion to amend the complaint and for additional discovery (# 9) is DENIED.

IT IS SO ORDERED.