**Mireille P. LEROY, Plaintiff,**

v.

**NEW YORK CITY BOARD OF ELECTIONS and Others Unknown, Defendants.**

No. 09–CV–3952 (ENV)(LB).

United States District Court, E.D. New York.

June 19, 2011.

Mireille P. Leroy, Jamaica, NY, pro se.

Stephen Edward Kitzinger, New York Law Department, New York, NY, for Defendants.

### *MEMORANDUM & ORDER*

VITALIANO, District Judge.

*Pro se* plaintiff Mireille P. Leroy commenced this action against the Board of Elections in the City of New York ("BOE"), alleging that BOE's decision to keep her name off of a primary ballot violated her constitutional rights. In a Memorandum and Order dated September 21, 2009, the Court denied Leroy's request for injunctive relief but granted her leave to file an amended complaint. After Leroy filed the amended complaint on October 7, 2009, the Court again dismissed the portions of that complaint that sought injunctive relief. The Court made a point to express no opinion on the claims for damages. BOE now moves to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

### I. *BACKGROUND*

The following allegations are drawn from the pleadings and are considered true for purposes of the current motion.

On or about July 16, 2009, Leroy filed a petition to be placed on the September 15, 2009 Democratic Party primary ballot for City Council in District 28 in Queens. The petition was comprised of a cover sheet and petition volumes containing identification and the signatures of voters supporting Leroy's candidacy, who were "petitioning" to have her name placed on the ballot. The cover sheet was defective; it stated that 16 separate volumes were attached but there were only 15 volumes filed. By letter dated July 21, 2009, BOE notified plaintiff of the defect and gave her an opportunity to cure it within 72 hours. Leroy then filed an amended cover sheet on or about July 23, 2009, which, as it turns out, was also defective. The amended cover sheet omitted the name of the political party in whose primary election plaintiff sought to run. On July 27, 2009, BOE "notified" Leroy's representative, William Reilly, in writing, that Leroy's name would not appear on the ballot for the September 15, 2009 primary.

On August 7, 2009, plaintiff commenced a special proceeding in Supreme Court,

Queens County, seeking an order validating her designating petition. After a hearing, the court dismissed the proceeding, finding that Leroy's papers commencing the Supreme Court proceeding to validate were untimely as they were filed more than three days after BOE's July 27, 2009 notice of invalidation. Plaintiff appealed the dismissal, but the Appellate Division, Second Department, affirmed on August 22, 2009. Leroy did not seek leave to appeal to the Court of Appeals. More than three weeks later, plaintiff filed the present action on primary day itself, September 15, 2009.[1] While she did not seek injunctive relief in connection with the primary election already underway, she did seek a temporary restraining order and a preliminary injunction requiring BOE to add her name to the November 3, 2009 general election ballot. The Court denied injunctive relief.

The instant motion addresses Leroy's claims for damages in which she alleges that BOE (1) deprived her of due process; (2) discriminated against her on the basis of gender; and (3) "violated the federal voters' laws by improperly allowing a conflict of interest to exist between the BOE and [her] campaign." Plaintiff seeks damages in the amount of $28 million.

## II. *STANDARD OF REVIEW*

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plain-

tiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiffs must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. A court must presume the truth of all factual allegations in the complaint for purposes of Rule 12(b)(6), but the court is not bound to accept the truth of legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986). Indeed, it is the factual allegations that are paramount, as "a complaint need not pin plaintiff's claim for relief to a precise legal theory," nor does it need to provide "an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. ——, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011).

In analyzing well-pled facts, a court will draw all reasonable inferences in favor of plaintiff. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591–92 (2d Cir.2007). Moreover, because plaintiff here proceeds *pro se*, her complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000).

On a motion to dismiss, the court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and mat-

---

1. Though otherwise unmentioned, it appears that prior to bringing the instant action Leroy commenced another proceeding in Supreme Court. Attached to her amended complaint is

an order denying relief from Supreme Court dated August 28, 2009 and an affirmance from the Appellate Division dated August 31, 2009.

ters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

## III. DISCUSSION

### A. Due Process

Leroy alleges that in not certifying her name for the ballot, BOE violated her due process rights for which she seeks damages, presumably recoverable under 42 U.S.C. § 1983. Defendants, in a one-paragraph briefing, summarily urge the Court to reject the claim in light of the Second Circuit's decision in *Rivera–Powell v. N.Y. City Bd. of Elections,* 470 F.3d 458, 464 (2d Cir.2006). The task, not surprisingly, is more complicated.

■■■ Procedural due process is constitutional bedrock. It "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Indeed, the "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Id.* (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646–47, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). Though not addressed by either side, the threshold question in adjudicating Leroy's due process claim is whether she possessed a liberty or property interest. The Supreme Court has long held that "there is no property or liberty interest in an elected office." *See Douglas v. Niagara Cnty. Bd. of Elections,* 07–CV–609A, 2007 WL 3036809, at *4, 2007 U.S. Dist. LEXIS 76693, at *9–10 (W.D.N.Y. Oct. 16, 2007) (citing *Taylor v. Beckham,* 178 U.S. 548,

577, 20 S.Ct. 890, 901, 44 L.Ed. 1187 (1900); *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944)). Lower courts in this circuit have followed suit in concluding that "a candidate for political office holds no property or liberty interest in an elected position." *Id.* at *4, 2007 U.S. Dist. LEXIS 76693 at *10; *see also LaPointe v. Winchester Bd. of Educ.,* 366 Fed.Appx. 256, 257 (2d Cir.2010) ("elected officials lack ... a protected property interest in their elected offices"); *Velez v. Levy,* 401 F.3d 75, 86 (2d Cir.2005) (plaintiff had no "constitutionally cognizable property interest in her elected office" because "public offices are mere agencies or trusts, and not property as such") (internal quotations and citation omitted); *Emanuele v. Town of Greenville,* 143 F.Supp.2d 325, 333 (S.D.N.Y.2001) (a candidate has no property or liberty interest in being elected to public office); *Cornett v. Sheldon,* 894 F.Supp. 715, 726 (S.D.N.Y. 1995) ("a person [cannot] possess a property interest in [a] federal office"). In line with these cases, the Court finds that Leroy has no property interest in her political candidacy, and, as such, her due process claim necessarily fails.

■■■ But, even if Leroy was deprived of some property interest, perhaps viewing ballot position itself (rather than the elective office) as property, BOE's actions in this case still do not violate fundamental due process principles. It is well-settled that "[t]he Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera–Powell,* 470 F.3d at 464 (quoting *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981)). Plaintiff's amended complaint alleges a litany of faults demonstrating how BOE violated her due process rights. Leroy claims, spe-

cifically, that BOE: (1) failed to follow its own procedures regarding transcription of hearings; (2) did not have a quorum at the determination meeting; (3) waited four days to send a determination letter notifying her that her amended petition was defective; (4) omitted one of the reasons she was removed from the ballot in its determination letter; and (5) permitted the determination letter to be signed by a staff member and not a board member. To determine whether BOE's actions denying Leroy ballot access amount to a constitutional violation, " 'it is necessary to ask what process the State provided, and whether it was constitutionally adequate.' " *Id.* at 465 (quoting *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)).

Critically, the Second Circuit has already approved the post-deprivation process provided to potential candidates under New York Election law.[2] *See id.* In *Rivera–Powell,* the plaintiff sought to be a candidate for judge of the Civil Court of the City of New York, but, as befell Leroy, was not certified for the ballot due to deficiencies in her petition. *Id.* at 460–64. She too contested BOE's determination in Supreme Court pursuant to New York Election Law § 16–102, but the court dismissed the proceeding for lack of jurisdiction. *Id.* at 464. The plaintiff, it turns out, failed to "verify" her pleading, as required by § 16–102. *Id.* Though Rivera–

Powell did not appeal this dismissal, neither did she raise the white flag. Instead, she later brought suit under § 1983, alleging, *inter* alia, that BOE violated her Fourteenth Amendment due process rights. *Id.* Applying the *Mathews v. Eldridge* three-part test,[3] the Circuit concluded "that the process provided to [the plaintiff] was adequate." *Id.* at 466. This holding was based on two considerations. First, the Circuit found that BOE held a hearing prior to removing the plaintiff from the ballot, at which her attorney appeared and participated. *Id.* at 466–67. But, more importantly, it noted that the aggrieved candidate "had the opportunity to obtain full judicial review by way of a special proceeding under New York Election Law § 16–102, which provides for expedited proceedings as to designations." *Id.* at 467. It was "[t]he combination of these two procedures [that the Circuit found] satisfie[d] due process." *Id.*

*Rivera–Powell,* defendants are correct, is fatal to Leroy's due process claim. Though her amended complaint attempts to raise several distinct due process violations by BOE, including lack of transcription and quorum at the determination meeting, the length of time to send a determination letter, the contents of that letter, and who signed it, what plaintiff is ultimately challenging is the totality of the process that culminated in the denial of her ballot access. That process, a process

**2.** The Second Circuit in *Rivera–Powell* did not address the threshold issue of whether a property interest existed in the first instance. Instead, it moved directly to whether adequate procedural due process was provided. The decision, therefore, does not support the proposition that a candidate has a property interest in an elected office—especially considering the overwhelming case law stating the exact opposite.

**3.** In *Mathews,* the Court held that when a "liberty" or "property" interest is at stake, courts should consider three "distinct fac-

tors" to determine what type of process someone is due before they are deprived of their "liberty" or "property." 424 U.S. at 335, 96 S.Ct. at 903. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

consistent with the process sketched by *Rivera–Powell,* satisfies the strictures of due process. Leroy differs, of course, arguing that BOE's action in her case ran afoul of *Rivera–Powell* because she was never granted a hearing prior to the ballot access determination. And it is true that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). This contention of Leroy, however, is at odds with other allegations in her complaint. Though she says she was not there, she complains, for example, that a quorum of commissioners was not present at the determination meeting at which ballot access was denied. Leroy effectively describes the "hearing" provided for in BOE's rules—precisely the type of hearing referenced in *Rivera–Powell. See* Rules of the Board of Elections of the City of New York, D1 and D2 (Notice of the time and place that the commissioners' committee determines whether petitions comply with the cover sheet and other binding requirements is posted both at the Executive Office and on BOE's website.)[4] Significantly, Leroy's litany of BOE miscues does not include any allegation that BOE failed to post on its website, or at its offices, notice of the determination meeting in her case.

■ Even worse for plaintiff, case law is unclear whether any "deprivation" actually even occurs at the time when an elections board denies ballot access. Since there was a separate BOE "hearing" conducted in *Rivera–Powell,* the Court declined to decide "when in the course of a candidate's removal from the ballot the constitutional 'deprivation' occurs—immediately after the [BOE's] vote, or only on election day, if the candidate has still not been reinstated." *Rivera–Powell,* 470 F.3d at 468 n. 10. This is significant as it can affect whether the Election Law § 16–102 validation proceeding should properly be considered "pre-deprivation" or "post-deprivation" review. Some lower courts, noting that *Rivera–Powell* left the issue unresolved, have found that any constitutional deprivation occurs on the corresponding election day, and, therefore, the § 16–102 proceeding constitutes pre-deprivation review. *See Douglas,* 2007 WL 3036809, at *5, 2007 U.S. Dist. LEXIS 76693, at *14–15 ("the availability of an expedited special proceeding under [ ] § 16–102 to address the merits of [the] petition satisfies the requirements of procedural due process"); *Murawski v. Pataki,* 514 F.Supp.2d 577, 586 n. 5 (S.D.N.Y.2007) ("Even in the absence of an opportunity to be heard prior to a BOE decision ... the statutory provision for an expedited review of that determination by the New York Supreme Court provides adequate pre-deprivation review and satisfies due process requirements."); *see also Cornett,* 894 F.Supp. at 727 (finding that § 16–102 affords sufficient due process). The Court agrees that if the denial of ballot access is a deprivation within the ambit of due process, deprivation occurs at the first moment a voter can cast a ballot in the subject election contest, if the candidate has not yet been reinstated to the ballot. Clearly, in the practicum of politics in New York, any slings and arrows suffered by an aggrieved candidate prior to actual failure to appear on the ballot at the time of voting is *de minimis.* As such, the § 16–102 special proceeding

---

4. Leroy relies on bits and pieces of these very rules but somehow omitted any reference to rules requiring notice and a hearing to consider whether a challenged petition, for example, complies with the cover sheet and binding requirements of BOE rules.

should be considered pre-deprivation review.

Much of the timing debate, it seems, is anchored in the view that § 16–102 is a specialized judicial review proceeding akin to the administrative review ordinarily provided by an Article 78 proceeding. It is not, since it affords far more. Viewed the way it was drafted—as an alternative route to ballot access determinations—it is compelling that § 16–102 constitutes pre-deprivation process. Pursuant to this section, a proceeding is timely if instituted within 14 days after the period to file a petition has expired, *or,* within three business days after the validity of a petition is determined by a board of elections, whichever is later. Consequently, a candidate can commence the special proceeding to validate a petition *even before final determination by the board.* For example, Leroy could have sought relief in Supreme Court to validate her petition after she was first notified of the cover sheet defect. The § 16–102 remedy is a vehicle for both invalidating and validating petitions, and, powerfully, the state court reviews the subject petition *de novo,* that is, independently of the board's actions. *See Cornett,* 894 F.Supp. at 727 (noting that in a § 16–102 proceeding, the state court reviews the petition *de novo* and may even find additional errors in the petition). Since this remedy is available to all candidates immediately after the last day to file a petition, even if a board's ballot access determination is the "deprivation", New York's two-track system offers candidates pre-deprivation review opportunities on both tracks—at the BOE hearing and by way of the § 16–102 petition to validate.[5] Given the two tracks for process and the political practicum, the energy spent on debating when deprivation occurs for procedural due process purposes is energy very much misspent.

■ Leroy's saga is a case in point. When BOE's examination confirmed a defect in her petition, the board notified her in writing and gave her an opportunity to cure the defect within three business days. After plaintiff responded, BOE held a meeting on July 23, 2009 to determine whether the amended cover sheet complied with state election laws and BOE rules. Leroy muddles whether she or her campaign was given notice of the meeting or an opportunity to attend and participate. (She merely claims that she was not present. BOE rules, of course, required such notice and hearing. Her amended complaint lists specific details that allegedly occurred at the determination meeting of the commissioners. Omitted from her list of horribles is any allegation that BOE did not post the notice of hearing required by the rules.) And, indeed, *Rivera–Powell* clearly noted that the plaintiff's representative attended and participated in a formal BOE "hearing." 470 F.3d at 463. But any added level of participation by the aggrieved candidate's campaign in the hearing described in *Rivera–Powell* is far from the benchmark. Due process is synonymous with two procedural attributes: notice and an opportunity to be heard. It "requires only that the state afford [the] party threatened with a deprivation ... a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.,* 620 F.3d 146, 151–52 (2d Cir.2010). *See also Interboro Inst., Inc. v. Foley,* 985 F.2d 90, 93 (2d Cir.1993) (Since the plaintiff's "position on the facts and the law were exhaustively rehearsed

---

5. In fairness, practically speaking, seasoned election law counsel will adjourn the early-filed petition to validate until after an election board has made a final determination. The "review" process, however, is still underway prior to the ruling.

before the relevant decision-makers ... an evidentiary hearing could not have affected the outcome."); *Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir.1984) (Declining "to attach talismanic significance to the availability of a pre-deprivation evidentiary hearing," since plaintiff "had the right to make written submissions on disputed issues of fact and law and had, following the deprivation, [Article 78] procedures available to compel a full-scale evidentiary hearing on its claims."). At heart, BOE gave Leroy adequate notice of the defects in the first cover sheet she submitted and provided her with an opportunity to respond. Her amended cover sheet, of course, was also defective, after which BOE conducted a public determination meeting—for which the rules required notice, and Leroy does not allege BOE failed to follow that rule—at which BOE sustained the new finding of fatal defect and determined that her name would not appear on the ballot. Practically speaking, too, it should be noted, that finalization of the primary ballot was still weeks away here—several candidates, including Leroy herself, would thereafter go to court. Even had BOE decided in Leroy's favor, ballot access would not have been assumed for her since § 16–102 gives any aggrieved party a *de novo* opportunity to seek to invalidate a board-approved petition. In contested New York primary elections, BOE's decisions are hardly ever considered the last word.

In any case, New York Election Law § 16–102, if not a "pre-deprivation" remedy, provided Leroy, as in *Rivera–Powell,* with the opportunity to obtain full "post-deprivation" judicial review. Moreover, Leroy was, without question, aware of this right as she attempted to commence a special proceeding in Queens Supreme Court on August 7, 2009. That the proceeding was dismissed as untimely is irrelevant. Similar to the plaintiff in *Rivera–Powell* who failed to verify the pleading

initiating her § 16–102 proceeding in Supreme Court, Leroy's failure to timely file her special proceeding does not change the fact that adequate post-deprivation procedures were available to her. Substantial compliance with BOE's rules regarding ballot access determinations, including notice and the opportunity to be heard at the determination meeting, and the availability of the expedited court proceeding provided for in § 16–102 adequately satisfies the due process guarantee. *Rivera–Powell,* 470 F.3d at 467. Since either a full pre-deprivation process or "at least some form of pre-deprivation hearing" together with adequate post-deprivation procedures to challenge any alleged illegalities in BOE's action, *id.* at 466–67, was provided, Leroy's due process claim fails and is dismissed on defendants' motion.

### B. *Equal Protection*

Leroy's next claim is that BOE's conduct denied her equal protection of the laws by denying her access to the ballot because of her gender. In support of this claim, Leroy alleges that Robert Hogan, also a candidate in District 28, submitted a similarly defective cover sheet and BOE found that he too was ineligible for placement on the ballot. However, the allegation is that on August 11, 2009, after BOE failed to answer the required calendar call, Supreme Court entered a default order restoring his name to the ballot. Leroy submits that BOE attorneys were present at the calendar call and contends they failed to answer because Hogan is male. She also contends that Stephen Jones, another District 28 candidate, was permitted to be placed on the ballot even though BOE staff in Queens had found that he had less than 600 qualifying signatures.

The Equal Protection Clause of the Fourteenth Amendment directs, in essence, that similarly situated individuals be

treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To establish an equal protection violation, a plaintiff must prove purposeful discrimination directed at an identifiable or suspect class. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995); *see also Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970). Furthermore, a plaintiff must demonstrate that similarly situated people were treated differently. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994). Mindful of plaintiff's *pro se* status, the Court notes that the facts alleged could also give rise to a "class of one" equal protection claim, a variation of the traditional equal protection claim. "In a 'class of one' case, the plaintiff uses 'the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain.' " *Prestopnik v. Whelan*, 249 Fed. Appx. 210, 212–13 (2d Cir.2007) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir.2005)).

■ Addressing Leroy's traditional equal protection claim first, she simply cannot establish intentional or purposeful discrimination on the part of BOE. Pointedly, her complaint proffers only a conclusory allegation of discrimination, which, " 'without evidentiary support or allegations of particularized incidents, does not state a valid claim' " and so cannot withstand a motion to dismiss. *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996) (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir.1990)). There is absolutely nothing in the pleadings to suggest that Leroy's gender played any role in BOE's decision. Moreover, contrary to Leroy's contention, Hogan and Jones, the two male candidates she identified, are not similarly situated. Leroy alleges that she was treated differently from Hogan because BOE did not defend his state court proceeding. But, the record of the determination in Hogan's case, to which plaintiff refers in her amended complaint, actually shows that Hogan's validating proceeding targeted specific objections that were filed against his designating petition. (*See* Exhibit C to Mot. to Dismiss.) The § 16–102 proceeding brought on Hogan's behalf was, therefore, focused solely on rebutting those objections. With respect to Jones, Leroy presumably argues that he was treated differently because he was placed on the ballot and she was not. But Jones too had no cover sheet defects; objections were filed against his petition but without the requisite proof of service. (*See* Exhibit B to Mot. to Dismiss.) Since Leroy cannot on these allegations demonstrate purposeful discrimination against similarly situated female candidates, her equal protection claim is entirely without foundation.

■ The lack of similarly situated individuals also makes any "class of one" claim non-meritorious, because, to prevail on such a claim, Leroy " 'must demonstrate that [she was] treated differently than someone who is *prima facie* identical in all relevant respects.' " *Prestopnik*, 249 Fed.Appx. at 213 (quoting *Neilson*, 409 F.3d at 104). The burden on this type of claim is somewhat higher as "the level of similarity between the plaintiff and the person(s) with whom she compares herself is 'extremely high'—so high (1) that 'no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy,' and (2) that 'the similarity in circumstances and difference in treatment are

sufficient to exclude the possibility that the defendant acted on the basis of a mistake.' " *Id.* (quoting *Neilson,* 409 F.3d at 104–05). Leroy does not make such a showing. Other than the mere fact that Hogan and Jones also sought to be candidates, the level of similarity is most certainly not "extremely high." One stark, indeed dispositive, difference is that both § 16–102 proceedings targeted specific objections, e.g., ineligible signatures, that were filed against the candidates; Leroy's focused on basic cover sheet defects. Wisely or not, cover sheet defects are mechanical and have long been fatal to candidate petitions in New York. *See, e.g., Pecoraro v. Mahoney,* 484 N.E.2d 652, 652, 65 N.Y.2d 1026, 1028, 494 N.Y.S.2d 289, 289 (1985) (affirming the invalidation of a petition as a cover sheet defect "is not a mere formalism"); *Grancio v. Coveney,* 454 N.E.2d 535, 60 N.Y.2d 608, 467 N.Y.S.2d 195 (1983) (finding petitioners' failure to conform their cover sheets to New York Election Law § 6–134 a matter of substance and not form, making the omissions fatal); *see also Golkin v. Abrams,* 803 F.2d 55, 57 (2d Cir.1986) (New York Election Law § 6–134(2) represents reasonable regulation of elections within constitutional bounds). To say the least, the substantive litigation challenges presented by the three candidacies were entirely different. That lawyers responding to those challenges chose to employ different strategies, including making the determination that a defense should not, or could not, in good faith be interposed, should come as no shock. As a result, the Equal Protection Clause is not implicated and Leroy's § 1983 claim fails on this theory as well.

### C. *Conflict of Interest*

▌  Finally, plaintiff alleges that BOE violated certain federal election laws by allowing a conflict of interest to exist. Leroy's story is that her amended cover sheet was submitted by John Owens, Sr., who was serving as her campaign manager at the time. She protests that BOE permitted Owens's estranged son, John Owens, Jr., to review her petition and make determinations about her candidacy. Aside from the bald assertion that this violates federal election laws, plaintiff has alleged no facts amounting to a violation of any constitutional or statutory provision. She does not even identify what "federal voters laws" she references. In its Memorandum and Order, dated September 21, 2009, the Court cautioned that Leroy's claim was "entirely conclusory and without any support in her complaint." Yet, her amended complaint still falls miles short, notwithstanding her *pro se* status. In any case, the Court is unaware of any express provision of law—federal or state—that such a "conflict" would violate. The residue of this claimed conflict would be, at best, more fodder for her due process claim and, as such, would be melded with the rest of Leroy's due process objections to BOE's deprivation of ballot access. It is also melded into the Court's conclusion that BOE's action in totality did not violate Leroy's due process rights for the reasons discussed in Part III.A.

### IV.  *CONCLUSION*

In accordance with the foregoing, BOE's motion is granted in its entirety and Leroy's claims are dismissed with prejudice pursuant to Rule 12(b)(6).

The Clerk of the Court is directed to enter judgment and to close this case. **SO ORDERED.**